IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW SENSATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOES 1-426, <br><br> Defendants. | **Case No.: 12-3800 JSC** <br><br> **ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S REQUEST FOR DISCOVERY PRIOR TO RULE 26(f) CONFERENCE (Dkt. No. 4)** |

This case is one of several "mass copyright" cases filed in this District on behalf of various plaintiffs against thousands of doe defendants accused of using BitTorrent technology to illegally download copyrighted files from the Internet. Now pending before the Court is Plaintiff's motion for emergency *ex parte* discovery under Federal Rules of Civil Procedure ("FRCP") 26(d) and 45 prior to the FRCP 26(f) conference. Specifically, Plaintiff seeks to subpoena Internet Service Providers ("ISPs") for information that will reveal the identities of the 426 Doe Defendants named in this suit. (Dkt. No. 4.) Because the number of defendants joined in this lawsuit is unmanageable, Plaintiff's application is DENIED without prejudice.

# BACKGROUND

**A.     Allegations of the Complaint**

Plaintiff, New Sensations, Inc. ("Plaintiff" or "New Sensations"), a California Corporation, is a motion picture production company and the owner of the copyrights and/or the owner of the exclusive rights in the United States for the adult entertainment motion picture called "Dirty Little School Girl Stories #4" (the "Motion Picture"). (Dkt. No. 1, p. 3:25-27, p. 4, p. 5:1-2). The Motion Picture is an original work produced by the Plaintiff, and Copyright for the Motion Picture was registered under United States law on May 3, 2012. (Dkt. No. 1, p. 5:4-5). The Copyright Registration Number is PA0001788748. (Dkt. No. 1, p. 5:5). Plaintiff released the Motion Picture to the public beginning April 2, 2012, through various vendors in compliance with copyright laws. (Dkt. No. 1, p. 5:3-8). Plaintiff alleges Defendants Doe 1 through Doe 426 ("Defendants") were copying and distributing the Motion Picture on a peer-to-peer ("P2P") network without its permission or consent. (Dkt. No. 1, p. 5:22-28, p. 6:1-2).

On July 20, 2012, Plaintiff filed a Complaint alleging that Defendants, by participating in P2P sharing using BitTorrent, infringed Plaintiff's copyrighted work of the Motion Picture. (Dkt. No. 1, p. 2, p. 5:22-28, p. 6:1-25). In Count One, Plaintiff alleges that each Defendant reproduced and distributed a substantial portion of the Motion Picture to the public without the permission or consent of the Plaintiff. (Dkt. No. 1, p. 4:24-28, p. 5:1-18, p. 6:1-2). Plaintiff alleges each Defendant used, and is using, a P2P network to reproduce at least one copy of the Motion Picture by making the Motion Picture available to the public for distribution to others through a P2P network. (Dkt. No. 1, p. 6:3-9). Through these actions, Plaintiff alleges Defendants have violated and continue to violate Plaintiff's exclusive rights of reproduction and distribution protected under the Copyright Act of 1976 (17 U.S.C. § 101 et seq.) including under 17 U.S.C. § 106(1) and (3). (Dkt. No. 1, p. 6:16-19). Plaintiff alleges negligence in Count Two. Plaintiff's theory is that Defendants could have additionally or alternatively acted negligently by keeping their Internet access unsecured, or by willfully sharing their Internet account with others, thus allowing illegal activity to occur on Defendants' account. (Dkt. 1, p. 7:1-27, p. 8:1-9). Finally, in

Count Three and Count Four Plaintiff makes claims for contributory and vicarious copyright infringement. (Dkt. No. 1, p. 8:11-25, p. 9:1-19).

**B.     BitTorrent Background**

The Chief Technology Officer of Copyright Enforcement Group, LLC ("CEG"), Jon Nicolini ("Nicolini"), attests to the technology of P2P sharing in which people can share files over the Internet. In a P2P network, a "swarm" is made up of a "group of seeds and peers sharing a digital file through the same torrent file." (Dkt. No. 4-2, p. 6:22-24). A "peer" is "one of the computers in a swarm sharing the digital file." (Dkt. No. 4-2, p. 6:24). A "seeder" is either "the computer on which the digital file was originally made available to a swarm, or a peer that has completed downloading the digital file and is making it available to others." (Dkt. No. 4-2, p.6:24-27). Because P2P file sharing functionality is not a native function of the two major operating systems for personal computers (Microsoft or Apple operating systems), nor of the four most popular browsers in the United States (Microsoft Internet Explorer, Mozilla Firefox, Google Chrome and Apple Safari), the original seeder and each of the other members of the swarm "must have separately installed on their respective computers special software that allows P2P sharing of files by way of the Internet." (Dkt. No. 4-2, p.6:1-16).

The process of sharing a file through P2P sharing using BitTorrent begins with an initial seeder that decides what work to make available on the Internet and thereafter creates a "torrent file," which is uniquely associated with the digital file of the work. (Dkt. No. 4-2, p. 7:10-14). The initial seeder then accesses the Internet through an ISP and makes the torrent file available on the Internet to the public. (Dkt. No. 4-2, p. 7:14-17). The initial seeder would then make his or her torrent file available on one or more websites, and the torrent file normally would include the name of the work included in the content file. (Dkt. No. 4-2, p. 7:14-23). The torrent file points to the content file, which is very large, while the torrent file is a smaller file "which describes the content file being distributed, what pieces (referred to as 'blocks' or 'chunks') into which the content file is divided, and other information needed for distribution of the content file." (Dkt. No. 4-2, p.7:18-22).

People may search for torrents for a specific work on the Internet, as the torrent file usually has the title of the work in its file name. (Dkt. No. 4-2, p. 8:23-27). After a person finds a torrent file on the Internet, he or she may open that torrent file with his or her BitTorrent client, and he or she will then join the "swarm," or the "group of people exchanging the work among themselves." (Dkt. No. 4-2, p. 9:1-3). "In turn, as each peer receives portions of the seed, most often that peer makes those portions available to other peers in the swarm." (Dkt. No. 4-2, p. 9:3-4). "Therefore, each peer in the swarm is at least copying and is usually also distributing pieces of the work at the same time." (Dkt. No. 4-2, p. 9:5-6). One swarm may last for months up to well over a year, depending on the popularity of the work, and people may leave and re-enter the same swarm at any time. (Dkt. No. 4-2, pg. 9:10-14). However, with respect to any particular swarm, the hash (an alphanumeric representation of a file) of a torrent file "remains the same." (Dkt. No. 4-2, p. 9:17-18).

Plaintiff is unable to obtain the identity of each Doe Defendant, but has attached to its Complaint Exhibit A, which lists each numbered Doe Defendant along with the Internet Protocol ("IP") address associated with each respective Defendant, the identity of the ISP associated with the IP address, the date and time ("Timestamp") that the alleged infringement of the Motion Picture was observed, and the software protocol used by the Defendant.[1] (Dkt. No. 1, Exhibit A). Although not organized chronologically, based on the Court's review the data submitted in Exhibit A to the Complaint indicates that the first and last date of the alleged infringing activity recorded was April 6, 2012, and June 9, 2012, respectively. (Dkt. No. 1, p. 12-35).

Now pending before the Court is Plaintiff's Emergency Ex Parte Application requesting early discovery; in particular, Plaintiff seeks to identify the Doe Defendants by subpoenaing the ISPs associated with the allegedly infringing IP addresses. (Dkt. No. 4, p.1-2).

---

[1] The chart also identifies the hashes associated with each IP address; the hashes are all identical to each other, indicating that the Doe Defendants listed joined the same swarm. (Dkt. No. 4-2, p. 18:13-16).

4

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(d)(1) requires a court order for discovery if it is requested prior to a Rule 26(f) conference between the parties. Generally, a "good cause" standard is applied to determine whether to permit such early discovery. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice of the responding party." *Id.*

To determine whether there is "good cause" to permit expedited discovery to identify anonymous Internet user doe defendants, courts consider whether:

> (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*OpenMind Solutions, Inc. v. Does 1-39*, No. 11–3311, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999)).

**DISCUSSION**

**A. Plaintiff Identified the Missing Parties with Sufficient Specificity**

Under the first factor, "the Court must examine whether the Plaintiff has identified the Defendants with sufficient specificity, demonstrating that each Defendant is a real person or entity who would be subjected to jurisdiction in this Court." *Pac. Century Int'l, Ltd. v. Does 1-48*, No. 11-3823, 2011 WL 4725243, at *2 (N.D. Cal. Oct. 7, 2011). The Court finds that it has.

In *Pacific Century International v. Does 1-48,* for example, the court found the plaintiff identified the doe defendants with sufficient specificity because the plaintiff utilized forensic software to identify the defendants' IP addresses on the date and time of the alleged infringing activity, and further used geo-location technology to trace the IP addresses to within the state of California. *Id.*; *see also Braun v. Does 2-69,* No. 12-3690, 2012 WL 3627640, at *2 (N.D. Cal. Aug. 21, 2012) (plaintiff identified the doe defendants with sufficient specificity because (1) the plaintiff took steps to ensure that the IP addresses accurately reflect addresses that were used to

copy plaintiff's copyrighted work; and (2) the plaintiff used geo-location technology to trace the IP addresses of each doe defendant to California); *Pink Lotus Entm't v. Does 1-46*, No. 11-02263, 2011 WL 2470986 at *3 (N.D. Cal. Jun. 21, 2011) (finding that the plaintiff met its burden to sufficiently identify the doe defendants by identifying the unique IP addresses of each doe defendant and tracing the IP address to California using geo-location technology).

Here, Plaintiff has identified the Doe Defendants with sufficient specificity because it used software identifying each Doe Defendants' respective IP addresses as well as the geo-location of the IP address during the alleged infringing activity. The data determined the geo-location of each Doe Defendant to be within California. These allegations are sufficient to make a prima facie showing of personal jurisdiction over Defendants.

**B.     Previous Steps Taken to Identify the Doe Defendants**

Under the second factor, the party should identify all previous steps taken to locate the elusive defendant. *Columbia Ins. Co.*, 185 F.R.D. at 579. "This element is aimed at ensuring that plaintiffs make a good faith effort to comply with the requirements of service of process and specifically identifying defendants." *Id.*

Plaintiff used the services of CEG to monitor its copyrighted work and to detect infringing activity. (Dkt. No. 4-2, p. 1:22-27). CEG is in the business of "discovering infringements, and arranging for the enforcement, of the copyrights of its clients." (Dkt. No. 4-2, p. 1:22-23). CEG uses a system of software components ("System") to detect copyright infringement on the Internet. (Dkt. No. 4-2, p. 13:18-20). The System performs several functions including: "downloading substantial portions of content files from seeds and peers in a swarm, verifying data accuracy and accountability process, confirming infringements, logging evidence, and the absolute prevention of false-positives." (Dkt. No. 4-2, p. 13:21-24). A work may be distributed on the Internet through multiple swarms, but CEG tracks the swarms separately so that "all Doe Defendants listed in any one case were members of the same, single, swarm." (Dkt. No. 4-2, p. 14:23-27).

CEG first locates its client's motion picture torrent file on the Internet and joins the swarm associated with that torrent file. (Dkt. No. 4-2, p. 14:9-11). Once CEG determines that

Case3:12-cv-03800-JSC   Document7   Filed10/01/12   Page7 of 13

the file it has downloaded is the client's motion picture, and a substantial portion of the motion picture in the suspect file is substantially the same as the corresponding portion of the client's motion picture, CEG records the unique hash tag and uses its System to search for additional computers on the P2P network that have, and are, actively distributing the same file. (Dkt. No. 4-2, p. 14:12-26).

CEG then logs the Timestamp, the IP address, the BitTorrent client used, the size of the file, and the percent of the file downloaded and the hash of the torrent file. (Dkt. No. 4-2, p. 15, p. 16:1-9). Only the anonymous IP address is available at this stage because users subscribe to services of an ISP and are assigned an IP address when the user gains access to the Internet. (Dkt. No. 4-2, p. 15:1-7). CEG uses available databases and determines the geo-location and ISP associated with the IP addresses during the infringing activity. (Dkt. No. 4-2, p. 16:10-15). For a further check, CEG determines that the file shared by each of the doe defendants was in fact the client's copyrighted work by rejoining the same swarm. (Dkt. No. 4-2, p. 16:16-22).

After the IP addresses involved in the swarm are located, CEG uses publicly available reverse-lookup databases on the Internet and identifies the ISP used by that computer as well as the United States city and state in which the computer was located. (Dkt. No. 4-2, p. 16:27, p. 17:1). The ISPs can review its own subscriber logs to identify the subscriber information such as the name and address of the subscriber. (Dkt. No. 4-2, p. 17:7-14). With respect to accused files, CEG sends notices, sometimes referred to as "Digital Millennium Copyright Act notices" or "DMCA notices" to the ISPs, which indicate the accused file and the associated IP address of the computer having that file available for download with the Timestamp associated with it. (Dkt. No. 4-2, p. 17:15-18). The notice requests that the ISP forward the notice to the subscriber, which includes among other things, CEG's contact information for the subscriber to arrange for a settlement.[2] (Dkt. No. 4-2, p. 17:20-21).

Here, CEG used the foregoing steps and compiled a list of the IP addresses associated with each Doe Defendant, the ISP associated with the IP address, the Timestamp that the alleged infringement by that Defendant was observed by CEG, and the software protocol used by

---

[2] Plaintiff has not submitted a copy of the DMCA notice that was sent to the ISP.

7

the Doe Defendants in allegedly infringing the Plaintiff's work. (Dkt. No. 4-2, p. 17:23-27). Plaintiff then sent DMCA notices to the ISPs requesting the ISPs to forward the notice to the subscribers associated with the IP addresses. (Dkt. No. 4-2, p. 17:18-20). The Doe Defendants listed in Exhibit A to the Complaint are the Doe Defendants who have not settled with CEG after receiving the DMCA notice. (Dkt. No. 4-2, p. 17:22-23). Because the IP addresses are anonymous in nature, Plaintiff is unable to identify each Doe Defendant by name and therefore is unable to serve the Defendants at this time. (Dkt. No. 4-2, p. 19:7-10, p. 18-21). Plaintiff has made a sufficient showing that it attempted to identify the Doe Defendants prior to requesting early discovery.

### C. Withstanding a Motion to Dismiss

Under the third requirement, a plaintiff should establish to the court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss. *Columbia Ins. Co.*, 185 F.R.D. at 579. "A conclusory pleading will never be sufficient to satisfy this element." *Id.* Thus, plaintiff must make some showing that "an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying features of the person or entity who committed that act." *Id.* at 580.

To prevail on its copyright infringement claim, Plaintiff must prove (1) that it owns a valid copyright, and (2) that each defendant copied a work covered by the copyright. *Online Policy Grp. v. Dieblod, Inc.*, 337 F.Supp.2d 1195, 1199 (N.D. Cal. 2004). Plaintiff alleges that it is the owner of the copyright of the Motion Picture, and that each Doe Defendant participated in the same P2P sharing network to share the same file of Plaintiff's Motion Picture. (Dkt. No. 1, p. 5:3-15). This is a sufficient showing that Plaintiff's copyright infringement claim would withstand a motion to dismiss.

The elements of Plaintiff's negligence cause of action are "(1) a legal duty to use due care; (2) a breach of that duty; and (3) the breach as the proximate or legal cause of the resulting injury." *Keum v. Virgin Am., Inc.*, 781 F.Supp.2d 944, 951 (N.D. Cal. 2011). In *Liberty Media Holdings*, a copyright infringement case involving P2P sharing, the court held that a negligence claim was not viable under similar circumstances. *Liberty Media Holdings,* 2011 WL 1869923 at

*3. There the plaintiff merely alleged that "defendants failed to secure their Internet access, which by virtue of this unsecured access, allowed the use of their Internet accounts to perform the complained of copying and sharing of Plaintiff's copyrighted motion picture," and did not include any other information in its complaint. *Id.* The court held that this information by itself, without an asserted legal duty, was not sufficient to support a negligence cause of action. *Id.*

Here, Plaintiff has alleged that the Defendants breached "the ordinary care that reasonable persons exercise in having an Internet access account." (Dkt. No. 1, p. 7:19-23). This allegation, however, is merely a legal conclusion. The Court is unaware of any caselaw holding that an Internet subscriber has a legal duty to every copyright holder whose material is available on the Internet to ensure that the subscriber's Internet access is not used for copyright infringement. Indeed, common sense dictates most people in the United States would be astounded to learn that they had such a legal duty. Accordingly, the Court concludes that Plaintiff's negligence claim is insufficient to withstand a motion to dismiss. Similarly, Plaintiff has not alleged sufficient facts for the Court to evaluate its claims for contributory or vicarious infringement.

Nevertheless, because Plaintiff has alleged sufficient facts to withstand a motion to dismiss on at least one of the claims alleged – the copyright infringement claim – the Court finds that this factor is met. *See Liberty Media Holdings, LLC v. Does 1-62*, No. 11-575, 2011 WL 1869923, at *4 (S.D. Cal. May 12, 2011) (granting plaintiff's motion requesting immediate discovery because under this factor, the plaintiff alleged sufficient facts to withstand a motion to dismiss on at least one claim asserted in the lawsuit). Further, Plaintiff has made a prima facie showing that the Complaint could withstand a motion to dismiss for lack of personal jurisdiction. Plaintiff submitted evidence with its Complaint that the IP address of each Doe Defendant was located within California, thus making a showing of personal jurisdiction.

A different issue is whether the Doe Defendants are properly joined. FRCP 20 *permits* joinder of defendants in a single action if a right to relief is asserted against them "arising out of the same transaction, occurrence, or series of transactions or occurrence" and a "question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)(B). "The

impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claim, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Further, FRCP 21 provides that "misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

Plaintiff contends each of the 426 Doe Defendants was part of the same swarm downloading and distributing the same file of the Motion Picture. The data submitted in Exhibit A to Plaintiff's Complaint indicates that the first and last date of infringing activity recorded was April 6, 2012, and June 9, 2012, respectively. (Dkt. No. 1, p. 12-35). Which and how many defendants may be properly joined in a BitTorrent P2P sharing case are not established. In some cases, courts have permitted joinder of defendants when the defendants were in the same "swarm." *See, e.g., Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332, 345 (D.D.C. 2011) (denying the ISP's motion to quash, in part based on improper joinder, based on the reasoning that joinder requires a "logical relation…which is a flexible test and courts seek the "broadest possible scope of action" and that the "BitTorrent file-sharing protocol 'makes every downloader also an uploader of the illegally transferred files…").

In other cases courts have found that the use of BitTorrent technology does not satisfy the requirements of permissive joinder. In *Diabolic Video Productions*, for example, the court rejected plaintiff's argument that the joinder requirement was satisfied merely because all defendants joined a common "swarm." *Diabolic Video Productions, Inc. v. Does 1-2099*, No. 10-5865, 2011 WL 3100404, at *3 (N.D. Cal. May 31, 2011). The court held that the "mere allegation that defendants have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards of joinder set forth in Rule 20." *Id.* Similarly, in *Pacific Century International*, the court found joinder improper because "the only commonality between copyright infringers of the same work is that each committed the exact same violation of the law in exactly the same way." *Pac. Century Int'l Ltd. v. Does 1-101*, No. 11-02533, 2011 WL 2690142, at *4 (N.D. Cal. Jul. 8, 2011). The court thus denied expedited discovery as to all doe

1    defendants, and granted expedited discovery only as to doe defendant 1, while severing and
2    dismissing the remaining does without prejudice for improper joinder. *Id.*
3        The trend in this District has been to find joinder improper in P2P file sharing cases
4    where the alleged commonality is only that the defendants participated in the same swarm. *See*,
5    *e.g.*, *Third Degree Films v. Does 1-3577,* No.11-02768, 2011 WL 5374569, at *3 (N.D. Cal. Nov. 4,
6    2011) (finding improper joinder where the alleged swarm lasted seven months and consisted of
7    over three thousand doe defendants); *Digital Sin, Inc. v. Does 1-5698,* No. 11-04397, 2011 WL
8    5362068, at *3 (N.D. Cal. Nov. 4, 2011) (finding improper joinder where the alleged swarm
9    lasted five months and consisted of five thousand defendants). Courts within this District have
10   also held that smaller swarms could not be properly joined. *See*, *e.g.*, *Boy Racer, Inc. v. Does 1-60*,
11   No. 11-01738, 2011 WL 3652521, at *4 (N.D. Cal. Aug. 19, 2011) (holding that the nature of the
12   BitTorrent protocol did not justify joinder of the otherwise unrelated sixty doe defendants); *Hard*
13   *Drive Productions, Inc. v. Does 1-188,* 809 F.Supp.2d 1150, 1163 (N.D. Cal. 2011) (finding improper
14   joinder where close to two hundred defendants were joined based on participating in the same
15   swarm).
16       This Court has considered this issue and found that joinder was proper in two cases. *See,*
17   *e.g.*, *Braun v. Does 1 and 2-69,* No. 12-3690, 2012 WL 3627640, at *3 (N.D. Cal. Aug. 21, 2012);
18   *AF Holdings LLC v. Does 1-96*, No. 11-3335, 2011 WL 5864174, at *3-4 (N.D. Cal. Nov. 22,
19   2011). In *Braun*, this Court held that the Plaintiff made a showing that it could withstand a
20   motion to dismiss based on improper joinder where there were 69 does alleged to have
21   participated in a swarm over a 36 hour period. *Braun,* 2012 WL 3627640, at *3. Similarly, in *AF*
22   *Holdings*, this Court found joinder of 96 doe defendants who allegedly participated in the same
23   swarm for two weeks could withstand a motion to dismiss. *AF Holdings LLC,* 2011 WL 5864174,
24   at *4. Here, there are considerably more Does and a longer period of the alleged swarm, which
25   alters the Court's willingness to find that joinder is proper.
26       In particular, joinder of hundreds of doe defendants raises manageability issues. For
27   example, in *On The Cheap*, the court stated "the joinder of about 5000 defendants will not
28   promote judicial efficiency and will create significant case manageability issues. For instance,

11

many of the Doe defendants will likely raise different factual and legal defenses." *On The Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 503 (N.D. Cal. 2011). Likewise, in *MCGIP*, where the only alleged commonality between the defendants was that they engaged in the same behavior concerning the same protected work, the court found improper joinder "particularly given that 149 Doe defendants downloaded the protected work at various dates and times ranging from March 28 to May 6, 2011." *MCGIP, LLC v. Does 1-149*, No. 11-02331, 2011 WL 3607666 at *3-4 (N.D. Cal. Aug. 15, 2011). Here, given that there are over four hundred Doe Defendants joined in one action based on alleged infringing activity over a two month period, this Court finds that there would be significant manageability issues.

Further, the Court is not aware of any good reason for permitting Plaintiff to join so many defendants in one lawsuit rather than filing separate lawsuits with fewer defendants who entered the swarm closer in time. That separate lawsuits increase Plaintiff's prosecution costs is not a good reason to join over 400 defendants, especially given the costs of defendants of defending these actions, and the fact that many of the originally targeted defendants may in fact not be liable. If Plaintiff wishes to use the federal courts to pursue these actions, it must do so in cases with fewer defendants even if it costs Plaintiff more money.

Accordingly, the Court concludes that the Complaint's identification of over 400 defendants allegedly participating in a swam for over a two-month period will create significant manageability issues that jeopardizes the fairness of the proceedings and will unduly burden the Court.  Thus, this Court finds that Plaintiff's Complaint as presently constituted could not withstand a motion to dismiss based on improper joinder.

**D.    Likelihood of Identifying the Doe Defendant Through Discovery**

The final factor concerns whether the discovery sought will uncover the identities of the Doe Defendants. *See Gillespie v. Civiletti*, 629 F.2d 639, 642-43 (9th Cir. 1980) (stating that early discovery to identify doe defendants should be allowed "unless it is clear that discovery would not uncover the identities"); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (holding that "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities"). Here, Plaintiff

requests early discovery by subpoenaing the Defendants' ISPs for the sole purpose of identifying the Defendants. To that end, Plaintiff seeks a Court order directing the ISPs to disclose the subscriber's identifiable information including the name, address (present and at the time of infringement), e-mail address, Media Access Control ("MAC") address, and the ISP's terms of service applicable for each Defendant. (Dkt. No. 4-3, p.1:22-27). The information obtained by Plaintiff through the services of CEG shows the IP address used at the time the alleged infringing activity occurred. The subscriber information associated with the IP address will disclose the identity of the account holder of the IP address.

## CONCLUSION

Based on the foregoing, the Court finds that there is a significant issue regarding the possible misjoinder of Defendants and the large number of Defendants sought to be joined in one case would be unmanageable for the Court. The Court thus exercises its discretion to DENY Plaintiff's motion for expedited discovery. This denial is without prejudice to Plaintiff amending its complaint to make the action more manageable and renewing its motion.

This Order disposes of Docket No. 4.

**IT IS SO ORDERED.**

Dated: Oct. 1, 2012

_Jacqueline S. Corley_
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE